**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**GREGORY BRADLEY,**

               **Plaintiff,**　　　　　　3:12-cv-1369
　　　　　　　　　　　　　　　　　　　　　(GLS)

              v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

               **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Lachman, Gorton Law Firm | PETER A. GORTON, ESQ. |
| P.O. Box 89 | |
| 1500 East Main Street | |
| Endicott, NY 13761-0089 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | VERNON NORWOOD |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

# **MEMORANDUM-DECISION AND ORDER**

## **I. Introduction**

Plaintiff Gregory Bradley challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Bradley's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## **II. Background**

On April 16, 2010, Bradley filed an application for DIB under the Social Security Act ("the Act"), alleging disability since January 28, 2010. (Tr.[1] at 49-50, 98-102.) After his application was denied, (*id.* at 67-71), Bradley requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 58). Pending that hearing, Bradley filed an application for SSI, which was escalated to the hearing level so that both applications could be heard together. (*Id.* at 405-11.) On March 5, 2012 Bradley appeared before the ALJ for a hearing. (*Id.* at 441-73.) The ALJ issued an unfavorable

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 8.)

decision on April 3, 2012, denying the requested benefits. (*Id.* at 14-29.) The ALJ's decision became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 6-10.)

Bradley commenced the present action by filing his complaint on September 6, 2012 wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 11, 12.)

### III. **Contentions**

Bradley contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 11 at 10-20.) Specifically, Bradley claims that: (1) it was error for the ALJ to fail to obtain the testimony of a vocational expert (VE) and the Appeals Council to fail to find him disabled based on such testimony; (2) the ALJ improperly evaluated the opinion of his treating psychiatrist; and (3) his credibility was improperly assessed. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 12 at 12-20.)

3

## IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 11 at 1-10; Dkt. No. 12 at 2-9.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Vocational Expert

First, Bradley contends that the ALJ should have obtained the testimony of a VE. (Dkt. No. 11 at 11-13.) Using the same logic, Bradley contends that testimony of a VE provided the Appeals Council a basis to review the ALJ's decision. (*Id.* at 10-11.) The court disagrees.

---

[2] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical. As such, parallel citations to the Regulations governing SSI are omitted.

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.976(b)(1); *see Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). However, even if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Perez*, 77 F.3d at 45 (internal quotation marks and citation omitted). Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. *Id*. at 45-46.

Here, following issuance of the ALJ's decision, but prior to a determination by the Appeals Council, Bradley submitted the deposition testimony of VE Victor Alberigi. (Tr. at 415-22.) Alberigi testified that if an individual of Bradley's age, education, and work experience was limited to sedentary work and was only able to understand, remember, and carry out simple instructions, the occupational base for sedentary work would be "materially limited." (*Id.* at 419-20.) Additionally, Alberigi testified that a

5

moderate limitation in concentration, persistence, and pace was the equivalent of an inability to perform in those areas from sixteen to thirty-three percent of the time.  (*Id.* at 421-22.)  Alberigi further explained that, "if that difficulty [in concentration, persistence, and pace] essentially precluded the person from being able to discharge the functions of even an unskilled job in an effective manner for [sixteen] percent of the workday," than the person would be unable to retain a job in the competitive labor market.  (*Id.* at 421-22.)

Initially, the Regulations provide that the "mental activities . . . generally required by competitive, remunerative, unskilled work [include u]nderstanding, carrying out, and remembering simple instructions[; m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions[; r]esponding appropriately to supervision, co-workers and usual work situations[; and d]ealing with changes in a routine work setting."  SSR 96-9p, 61 Fed. Reg. 34,478, 34,483 (July 2,1996); *see* 20 C.F.R. § 404.1521(b)(3)-(6).  Moreover, in making a step-five ruling, an ALJ may rely on the Medical-Vocational Guidelines found in 20 C.F.R. pt. 404, subpt. P, app. 2, as long as the claimant's age, education, work experience, and residual functional

6

capacity (RFC)[3] coincide with the criteria of a rule contained in those Guidelines. *See* 20 C.F.R. § 404.1569; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009). However, when a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations," the Commissioner "must introduce the testimony of a [VE] (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603, 605 (2d Cir. 1986)

Here, after noting the mental abilities required for unskilled work and concluding that "the evidence establishes that the claimant has no significant limitations in the performance of these basic mental demands of work," the ALJ applied the grid guidelines and found Bradley not disabled. (Tr. at 28-29); *see* SSR 83-10, 1983 WL 31251, at *3 (1983) (explaining that the rules contained in the grid guidelines "reflect[] the presence of nonexertional capabilities sufficient to perform unskilled work at the pertinent exertional levels"). Based on this determination, the Appeals

---

[3] A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez*, 77 F.3d at 46.

7

Council found that the ALJ did not err in failing to consult with a VE. (Tr. at 7.)

Bradley argues that the ALJ's RFC determination—that Bradley could, on a sustained basis, frequently understand, carry out, and remember simple instructions, frequently respond appropriately to supervision, co-workers, and usual work situations, and frequently deal with changes in a work setting—is inconsistent with her later determination that his nonexertional limitations did not significantly erode the occupational base for sedentary work. (Dkt. No. 11 at 10-13; Dkt. No. 13, Attach. 1 at 1-2; Tr. at 23.) According to Bradley, if he is limited to performing the basic mental demands of work frequently, he would be unable to perform such activities from one-third to two-thirds of the time. (Dkt. No. 11 at 11.) Bradley points to the definition of the term "frequent" in SSR 83-10, which defines "light work" as requiring frequent lifting and carrying of objects weighing up to ten pounds, and explains that "'[f]requent means occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *5-6. Despite this definition of "frequent" in relation to light work, the Regulations provide no similar definition in terms of unskilled work. Rather, the Regulations use the term "sustained basis" to describe

8

the temporal requirements of unskilled work, specifically eight hours a day, five days a week, or an equivalent work schedule. *See* SSR 96-9p, 61 Fed. Reg. at 34,483.

It may well be that "frequent" is a term of art under the Regulations, however, in context, it is clear that the ALJ was using the term in the vernacular sense,[4] and her determination that Bradley could perform the basic mental demands of unskilled work on a sustained basis is supported by substantial evidence.[5] (Tr. at 23, 26-27); *infra* Part VI.B. Accordingly, the ALJ did not err in failing to consult with a VE, and Alberigi's testimony is irrelevant. *See Bapp*, 802 F.2d at 605-06 (holding that "[i]f the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate").

## B. <u>Treating Source Rule</u>

Bradley also argues that the ALJ's decision to discount the opinion of treating psychiatrist Damon Tohtz is not supported by substantial evidence.

---

[4] Merriam–Webster lists the words "constant, regular, habitual, periodic, periodical, repeated, steady" as synonyms for the word "frequent." Merriam–Webster, http://www.merriam-webster.com/dictionary/frequent (last visited Sept. 16, 2013).

[5] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

(Dkt. No. 11 at 13-16.) Further, Bradley contends that the ALJ failed to provide good reasons for such decision, as required by the treating source rule. (*Id.* at 14-16.) The Commissioner counters, and the court agrees, that the ALJ properly evaluated Dr. Tohtz's opinion, and her decision to afford it less than controlling weight is supported by substantial evidence. (Dkt. No. 12 at 12-15.)

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where 'the evidence of record permits [the court]

10

to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" *Id*. (citation omitted).

Here, Dr. Tohtz opined that Bradley suffered a serious limitation in the areas of maintaining attention and concentration for extended periods of time, and completing a normal work day and work week without interruptions from symptoms and performing at a consistent pace. (Tr. at 318.) However. Dr. Tohtz also explained that Bradley's "mental condition is well-controlled and has been for the last couple of years on his current medication, his mental condition is not an issue." (*Id.* at 319.) The ALJ considered Dr. Tohtz's opinion and gave it "more weight" than the opinion of Bradley's former treating psychiatrist Tahirul Hoda because his statement that Bradley's mental impairment "is not an issue" is consistent with the record. (*Id.* at 26-27.) However, the ALJ concluded that Dr. Tohtz's opinion regarding Bradley's stamina, concentration, and persistence is not consistent with the longitudinal medical evidence of record. (*Id.* at 27.) The ALJ pointed out various occasions when Dr. Tohtz indicated that Bradley's recent and remote memory skills were intact. (*Id.*

11

at 23, 225-26, 340-43, 346-48.) In addition, Dr. Tohtz's opinion with respect to concentration, persistence, or pace is inconsistent with the opinion of psychological consultant L. Blackwell. (*Id.* at 23, 308-11.) Thus, the ALJ "acknowledged Dr. Tohtz's limitations by limiting [Bradley] to only the basic mental demands of unskilled work," as opposed to semi-skilled work, which he had performed in the past. (*Id.* at 27.)

In weighing the opinion evidence of record, the ALJ explicitly referenced 20 C.F.R. §§ 404.1527 and 416.927, as well as relevant social security rulings. (*Id*. at 24.) The ALJ also undertook a thorough discussion of the medical evidence of record which suggested impairments less severe than those articulated by Dr. Tohtz. (*Id*. at 23, 25-27.) Finally, it is evident from the ALJ's direct citation to "extensive treatment notes" spanning a more than two-year-period, (*Id*. at 23, 25-27), that the nature and duration of Dr. Tohtz's treatment relationship with Bradley were properly considered. As it is clear that he properly applied section 404.1527(c), the ALJ did not err in failing to methodically discuss each individual factor, and his assessment of Dr. Tohtz's opinion is legally sound. *See* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case.").

Bradley's argument that the ALJ's decision to discount Dr.Tohtz's assessment is not supported by substantial evidence is similarly unavailing. As noted by the ALJ, throughout the relevant period, Bradley denied any manic or depressive symptoms and expressed no acute concerns. (Tr. at 22, 25, 225, 230, 264, 280, 337, 340, 343-44, 346, 351-52, 364, 369, 377-78.) Bradley also consistently indicated that he was functioning relatively well, and treatment notes reveal that he reported eating, sleeping and enjoying activities regularly. (*Id.* at 225, 280, 340, 343-44, 346, 351-52, 364, 372, 377-78.) In July 2009, Dr. Tohtz assigned Bradley a Global Assessment of Functioning (GAF)[6] score of sixty-five, indicating some mild symptoms or some difficulty in social or occupational functioning. (*Id.* at 280-82); Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000). Thereafter, Dr. Tohtz consistently assigned Bradley GAF scores suggesting mild symptoms or difficulty.[7] (Tr. at 232, 266, 282, 337, 343, 348, 366, 371, 374, 379.) Moreover,

---

[6] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004)*.*

[7] On one occasion, in December 2009, Dr. Tohtz assessed a GAF score of fifty-five, indicating moderate symptoms or moderate difficulty in social or occupational functioning. (Tr. at 249); Diagnostic and Statistical Manual of Mental Disorders at 34.

13

throughout the record, Bradley's mental status examinations were largely benign, as Bradley was found to have good eye contact, an appropriate affect, normal mood, and intact thought processes, memory, cognitive function, insight, and judgment. (*Id.* at 225-27, 230-32, 264-65, 280-82, 336-37, 340-42, 344-48, 352-53, 364-66, 369-70, 372-73, 378-79.) Dr. Tohtz repeatedly noted that Bradley's mental status examinations were stable, and that his symptoms were well controlled by medication. (*Id.* at 265, 282, 337-38, 341-42, 345, 347, 353, 370, 373, 379.) Accordingly, the ALJ provided sufficient reasons for discounting portions of Dr. Tohtz's opinion, and her decision to do so is supported by substantial evidence.

## C. Credibility

Finally, Bradley contends that the ALJ erred in evaluating his credibility, arguing that the reasons provided by the ALJ for discounting his testimony are not supported by the record. (Dkt. No. 11 at 16-20.) According to the Commissioner, the ALJ's credibility determination was legally sound and is supported by substantial evidence. (Dkt. No. 12 at 16-17.) The court again agrees with the Commissioner.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce

14

the [symptoms] alleged," she "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. §§ 404.1529(c)(3)(I)-(vi), 416.929(c)(3)(I)-(vi)).

In this case, the ALJ found Bradley's statements concerning the intensity, persistence, and limiting effects of his symptoms "partially credible." (Tr. at 25.) The ALJ explained that the medical and opinion

15

evidence contradicted Bradley's subjective complaints. (*Id.* at 22-23, 25-27.) Specifically, Bradley testified that he suffered severe restrictions to his activities of daily living, which was inconsistent with Dr. Tohtz's treatment notes. (*Id.* at 22, 225, 280, 340, 343-44, 346, 351-52, 364, 372, 377-78, 453-58, 460-61.) Bradley also testified that he has significant difficulty interacting with others, but Dr. Tohtz opined that Bradley suffered no limitations in his ability to interact with others. (*Id.* at 22-23, 457, 464-65, 319.) Although Bradley testified that he soils himself three to four times a week as a side effect of his medication, treatment notes are devoid of such complaints, and Dr. Tohtz noted that Bradley reported no side effects of his medication. (*Id.* at 225, 227, 237, 253, 280, 320, 340, 343-44, 352, 361, 371-72, 374-75.) The ALJ also noted that Bradley left his last job due to downsizing, reported working after his alleged onset date, and collected unemployment benefits after his alleged onset date.[8] (*Id.* at 25, 103-04, 150, 199, 352, 372, 469.) Further, the ALJ noted that Bradley was not

---

[8] Despite Bradley's assertions, (Dkt. No. 11 at 17-18), an ALJ may consider evidence that a claimant received unemployment benefits and/or certified that he was ready, willing, and able to work during the time period for which he claims disability benefits as one factor relevant to assessing credibility. *See Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Andrews v. Astrue*, Civ. No. 7:10-CV-1202, 2012 WL 3613078, at *12-13 (N.D.N.Y. Aug. 21, 2012); *House v. Comm'r of Soc. Sec.*, No. 09-CV-913, 2012 WL 1029657, at *12 (N.D.N.Y. Feb. 29, 2012).

16

always compliant with his prescribed treatment. (*Id.* at 25, 267, 366.)

Ultimately, the ALJ explicitly acknowledged consideration of 20 C.F.R. § 404.1529, (Tr. at 24), and it is evident from her thorough discussion that her credibility determination was legally sound. *See Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) ("[F]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that she considered the entire evidentiary record." (internal quotation marks and citation omitted)). Additionally, the ALJ's determination that Bradley's subjective complaints were partially credible is supported by substantial evidence. (Tr. at 25-26.)

### E. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

### VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Bradley's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 30, 2013
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court